This case we have this morning is number 17-2484, United States v. Reese, Mr. Shuman and Ms. Boshefsky. Good morning, Your Honors, and may it please the Court, my name is Jacob Shuman and I represent the appellant, Kevin Reese. May I please reserve three minutes of my time for rebuttal? Certainly may. Thank you. There are multiple issues in this case, Your Honors, some that go to Mr. Reese's convictions and some that relate to his sentence, and unless the Court directs otherwise, I'd like to start with his convictions. The first issue is the District Court's denial of Mr. Reese's pretrial motion to dismiss his retained attorney, Joseph D'Andrea. The Court clearly erred by finding that Mr. Reese had not established good cause to replace Mr. D'Andrea. The record shows that Mr. Reese did in fact establish good cause. First, Mr. Reese showed that he and Mr. D'Andrea- Do you want to start with the Speedy Trial Act instead? Sure, I'm happy to start with the Speedy Trial Act. On that issue, the parties agree that the issue is reviewed for plain error because Mr. Reese filed a motion to dismiss the indictment on speedy trial grounds. And there's two delays in the case that constitute plain error. The first was the Court's sua sponte order delaying the case from October 24th to December 5th. That's a total of 42 days. At that point, 50 non-excludable days had already passed, so that continues, takes us past the 70-day limit. And that's a sua sponte continuance. On its face, it says it's in accordance with the Court's calendar. The Speedy Trial Act makes very clear that delay that's due to court congestion is not excludable as an ends of justice continuance. And we cite in our case multiple Court of Appeals decisions reversing on this- We can come back to that, and that's a good point. The second was November 10th. Yeah, so- So what happened there? Right, so that was a 79-day delay from December 5th to February 22nd. Your briefs say 71. It really was 79, wasn't it? If it said 71, there may have been a typo. Yeah, it should say 79. I apologize for that. December 5th to February 22nd or something like that. That's right. And there's two problems with this delay. The first is that the judge never actually found that this was a continuance in the ends of justice. That finding is required under this Court's law and under the Speedy Trial Act. This time was never excluded from the 70-day limit. There was no finding that it was for the ends of justice. So on that ground alone, it violated the act. Didn't his counsel agree that that worked out well for him? Well, that's the second problem with the delay. The first problem is that it was never excluded. It was never found to be in the ends of justice. The second problem is that it was in accordance with the Court's calendar. And if the Court looks at the appendix on page 70, you can see the exchange. The first thing the district court says is, I apologize for this because I can't try the case until February 22nd. So it's clearly the Court's calendar that's the impetus for the delay. And all Mr. D'Andrea said was, February 22nd will work for me. I'm just really bad in December and January myself. But Mr. D'Andrea didn't request this delay, and there's no indication that if the Court had wanted to have the trial sooner, that Mr. D'Andrea wouldn't have been able to accommodate it. Well, isn't that what the statement means? I mean, when you say I'm not good in December and January, that's not even shorthand. That's a direct statement that I can't do it. He said he was busy. He agreed with the Court. But the Court is the one who said, the Court said from off the bat, I need to delay this case until February 22nd because I'm busy. I mean, that's what the Court said. And then Mr. D'Andrea was sort of just agreeing with the Court. What's the prejudice to the defendant if his lawyer couldn't have tried the case anyway? I mean, I understand that your argument is it was initiated by the Court and that's the mistake, but clearly it's an instance where counsel for the defendant couldn't have made it anyway. I'm not sure that the record shows that. All he was doing was agreeing with the Court. But there's no prejudice required to show a speedy trial act violation, and that's because it doesn't just protect the defendant, but it also protects the public. The public has an interest in a speedy trial as well. And in this case, the Court delayed the trial by 79 days. That's more than the entire time limit for a trial under the Speedy Trial Act. It was the Court's impetus, the Court's initiative delaying the trial, and counsel kind of went along with it and agreed that he was busy. But again, if the Court had said, I want to have this case in December or January, there's no indication that Mr. D'Andrea couldn't have accommodated that. We don't know what his schedule was. But again, regardless of the reason for this delay, it was never found to be in the ends of justice. So prejudice has nothing to do with this analysis? No. Even under clear error review? Mr. Reese has to show an effect on his substantial rights. And what an effect on substantial rights means, and this is from the Supreme Court in Molina-Martinez, is a reasonable probability that but for the error, the outcome of the proceeding would have been different. What evidence do we have? Well, if the Court had not improperly excluded this time, then the 70-day time limit would have been breached and the Court would have had to dismiss the indictment. And what this Court said in Stevenson is that dismissal of the indictment on Speedy Trial Act grounds is not a toothless sanction because the government has to go convince another grand jury to re-indict. So the effect on the substantial rights is the loss of a chance to have the indictment dismissed. Isn't the case that really helps you Zedner, Supreme Court decision? Zedner is a great case for us because it makes clear, as does Carasquillo, this Court's decision, that there's a public interest in a speedy trial, that a defendant, the only way to waive that right is not to move to dismiss, and that there's no prejudice required to show a violation. But I don't understand your substantial rights point. In any case, you would say, by the violation, I've missed an opportunity to move for dismissal. It's got to be more than that. It's not just an opportunity to move for dismissal. The Court would have had to dismiss the indictment. The only question would be, should it be with or without prejudice? No, no, no. Your retort to Judge Segarra's question was your quote from the Supreme Court case about substantial rights. Right. And I understand, but then you said what he missed out on here was the opportunity to move to dismiss because the time had been drawn. That would be the argument in every case. Right. It's not just the opportunity to move to dismiss. It's the fact that the indictment would have been dismissed because if the Court had recognized this error, if this error had been recognized by the Court and the time had not been excluded improperly, then the Speedy Trial Act would have been breached. And that's the effect on his substantial rights. But you've got the 1st, the 2nd, 7th, the 10th, and the D.C. circuits saying that when you object to a Speedy Trial Act violation, you have to object to a particular period of time. That's right. That wasn't done here, was it? It was not. Mr. Reese did move to dismiss. He was concerned about how long the trial had taken. His counsel didn't raise the challenges we're raising now. But a panel of this Court said in Greer, quite correctly, that the text of the Speedy Trial Act does not require what the other circuits have said it requires. The text of the Speedy Trial Act... Wasn't Greer a non-presidential opinion? It was, but I think it was well-reasoned because what the Speedy Trial Act says... I was on the panel, so it couldn't have been that well-reasoned. It was well-written, at least. The Speedy Trial Act says that failure of the defendant to move for dismissal prior to trial shall constitute a waiver of the right to dismissal. And Mr. Reese moved to dismiss in this case, which means he didn't waive his arguments. What this Court said in Greer is that requiring something in addition, also requiring the defendant to raise identical arguments on appeal, reads something more into the Speedy Trial Act that's not there. And also, the legislative history of the Act, which this Court quotes in Carasquillo, says that any construction which holds that any of the provisions of the Speedy Trial Act is waivable by the defendant other than a statutorily conferred right to move for dismissal is contrary to legislative intent. Underlying one of the comments you just made in the last two minutes sounded like an articulation of an ineffective assistance. Why should we address it now rather than you articulate that argument at the appropriate time? Well, I mean, there may be an ineffective assistance argument as to the Speedy Trial Act claim, but I just don't think the Court needs to get there because regardless of Mr. D'Andrea's performance, the Court committed plain error, obvious error, by delaying this trial for 121 days based on its calendar. So, you know, whether Mr. D'Andrea was ineffective is sort of a separate issue. I don't think you need to wait for that. The error here is obvious. If Mr. D'Andrea was also ineffective at sentencing, that's a whole other story. If the Court doesn't have any other questions on Speedy Trial. Could I ask about one thing that I was concerned about, your right to counsel of choice, particularly at the sentencing phase. Your adversary brings up the point, heck, there was nothing for the Court to do. The Court had already denied the motion, albeit in short order, and then he files his IFP paperwork. What was the Court to do? Well, it's important to remember that Mr. Reese was effectively pro se for this, and pro se litigants' filings are construed liberally. He filed a motion seeking new counsel. The Court files an order denying that motion, saying you need to file the affidavit. It was also the second time he'd been told, if you want to go IFP, you've got to file the paperwork. That's true, and the Court properly denied his second motion when he filed it without the affidavit. Then, proceeding pro se, he files the affidavit along with a cover letter that says, please note the enclosed affidavit submitted for filing in this matter per the judge's order of May 9, 2017. And this is what, within two weeks after that? Is that right? Yeah, I think that was about two weeks after. That comes up on the Court's docket. I think the Court should have understood, certainly Mr. Reese would have understood, that by filing the affidavit with the cover letter, he was renewing his motion for new counsel. The government's argument is he needed another piece of paper on top of that that said renewed motion for new counsel. And that's just so formal, especially for pro se litigant, I think. How would the docket sheet reflect the motion without a motion being filed? It's entry number 78 on the docket, and it says, CJA 23 financial affidavit by Kevin Reese, and it includes both the affidavit and the cover letter, which says that it's being submitted per the Court's order. The Court was on notice that Mr. Reese had renewed his motion, and it's clear, I think, from the whole context of the exchange, that Mr. Reese was doing what the judge asked him to do, was relating the affidavit to the order that had denied his motion, and that it was a renewed request for new counsel. And there was really no cause, no ground to deny it. He didn't need to show good cause to dismiss Mr. D'Andrea because he was a retained attorney, and it was more than two months before sentencing. And by ignoring the filing, the judge essentially arbitrarily denied his right to choice of counsel. And that violation requires resentencing. But even earlier, Mr. Reese filed a motion to replace Mr. D'Andrea about two weeks before the trial, and the judge did hold a hearing on that. And at that hearing, Mr. Reese established good cause to replace Mr. D'Andrea. The two of them in the three months leading up to trial met in person only twice, and the record shows that both of those meetings devolved into arguments, shouted insults, obscenities, completely unproductive. The two couldn't even have a civil conversation. I'm sorry. I'm sorry. Well, I was just going to say, you have a pretty high hill to climb with clear air or review, right? I mean, the attorney did stand up and say, you know, I can work through this. I'm happy to represent this gentleman. He said he'd do whatever the court asked him to do. He acquiesced to the court's authority as is proper, but we cite two cases in our brief, Blackledge and Mullin, where the attorney said they were capable of representing the defendant, and they went forward and the court of appeals found that that was clear error because even if an attorney says they're capable of representing the defendant, it doesn't mean that they're having the kind of civil conversations or cooperation that's necessary for a defendant to have his right to choice of counsel. We have two, like I said, two in-person meetings that turn into shouted arguments and insults. Other than that, there's only two communications between the two in the three months leading up to trial. The first is a short message from Mr. D'Andrea telling Mr. Reese that the government had withdrawn its plea offer, and the second was a message from Mr. Reese to Mr. D'Andrea asking him to file some motions, to which Mr. D'Andrea responded equivocally. There's no reason to think that Mr. Reese was acting in bad faith. He was in prison. He had nothing to gain from delay. He'd been complaining about Mr. D'Andrea since October, a letter to the court shows, and it was his first request for new counsel. They don't seem to reflect the kind of antipathy that Mr. Reese argues. So the email communications we have are from prior to October 2016, and the relationship seems to have gotten especially bitter in acrimonies from October 2016 until the trial in February 2017, and between those two dates, those are the critical dates leading up to trial. We have two bad in-person meetings and two brief written communications, and other than that, the record doesn't show anything, and Mr. D'Andrea didn't dispute any of that when Mr. Reese explained the relationship to the court. The last point I make is that it was his first request for new counsel, and in Mullen, the Fourth Circuit noted it was not aware of any case where the Court of Appeals had upheld the denial of a motion for new counsel when it was the defendant's first request. Before you sit down, if you could just address quickly the Rule 32 argument that you made with regard to the sentencing report and also the supervised release condition that you claim is too vague. So on the Rule 32 issue, I mean, this is super clear. The judge has a responsibility to verify that the defendant and his attorney had read and discussed the PSR. In this case, Mr. Reese said during his elocution that Mr. D'Andrea had not read or discussed the PSR with him. By doing that, he both preserved the error for de novo review. That's what the panel of this court held in Mark. So that puts the burden on the government to show the court's error was harmless, and the government can't show that the error was harmless. In fact, we identified three different ways that had Mr. Reese and Mr. D'Andrea conferred about the PSR, they could have raised arguments that would have affected the final outcome. What about supervised release? On the supervised release condition, it's incredibly vague. What it says is Mr. Reese, for three years after his release from prison, is barred from any employment in which he would have control over money, finances, or engage in financial transactions. Conceivably, that control over money involves practically every job, from a waiter to a parking lot attendant. Even attorneys get it per diem when they go to conferences. So it's extremely broad. It bars Mr. Reese from pretty much any service industry work that he'd be qualified for. And it's also very vague because it's hard to understand. What does control over money mean? How much control is necessary? Is it a job where he'd be writing checks like he did at his earlier job, or is it any job where he'd touch currency? And because it's both overbroad and vague, it violates due process. All right, we'll get you back on the phone. Thank you. Thank you. Ms. Olszewski? Good morning, Your Honors. Michelle Olszewski on behalf of the United States. This is like a law school exam. There are so many issues here. Do you want to start with Speedy Trial? Yes, Your Honor. The two points where the Speedy Trial issue comes up, specifically October 12th of 2016, when the district court, so Esponte, continues the trial, as we know, for 42 days. And did he give a reason? The reason is brief, and it simply states in accordance with the court's calendar. It indicates... But congestion is not a valid reason, right? It is not, Your Honor. And the government is fully aware that the statute specifically says that continuances will not be granted for that reason. However, it was granted, and there was no objection to that continuance. And in addition... Doesn't Zedner say that consent is not a defense in pages 500 to 501 of Zedner, Justice Alito? It does indicate that consent is not a defense, Your Honor, and so a waiver of that issue. In the event the court finds that error occurred because of the Speedy Trial Act, the defendant still has the burden of showing that violation, that error, had an effect on his substantial rights, regardless of the 42 days or the time, the 79 days that occurred from the... Can you respond to his specific argument that here, one of the substantial rights that were violated is the inability to make the motion to dismiss the indictment? Your Honor, the remedy would have been dismissal of the indictment in this case. However, it would not have affected his substantial rights because... And the defendant bears the burden of showing this because, in this case, the dismissal would have been a punishment, and the punishment would have been an effect on the court because this was the court's error. And in a sense, this is a dismissal that would have been, in all likelihood, in a great likelihood, a dismissal without prejudice because this was the court's error. This was through no fault of the government, and the government would have been punished for what was essentially the court's error. That's an interesting, equitable argument, but do you have any support for that? Tell me a case that stands for that proposition. The cases that are cited in my brief, Your Honor, I would rely on those. Let's say, in this instance, we should not grant the appellant relief because the substantial rights argument is not valid. Well, the argument itself is valid. However, the defendant bears the burden of showing that his substantial rights were affected. And in this case, if there was a dismissal, if there was a motion to dismiss, which was granted, the indictment would have been dismissed. This case would have been represented immediately. This was a serious case. There were hundreds of thousands of dollars. Didn't Justice Alito also say in Zedner that the public has an interest in a speedy trial? It does, Your Honor, but this is a case that would not have involved the reputation of the judicial system because of the violation, because it was a serious offense, hundreds of thousands of dollars. There were real victims here, and they would have been essentially punished because of a court error. And because the case could have been represented immediately, the government was ready for trial. The statute of limitations were not an issue because even as we stand in this court... I'm not saying the government did anything wrong, but when the court gives, according to the Speedy Trial Act, when it sua sponte, grants an extension, even if it says that the magic words in the statute, it still has to give reasons, not necessarily at that time, but later on. It never does. And then on November 10th, it gets worse. There's no reason given whatsoever. There's no check the box. There's no anything. And it seems when you look at that, the only thing that you really have to go on is if you can latch yourself on to these other circuits' decisions and say if you object to a speedy trial, you've got to give a time period. But here the time period is so well understood, it's all the time going forward from November 10th to the time of trial, from December 5th to February 22nd. So I'm not sure that those cases help you, and I don't know how I get around Zedner. You don't really have to show necessarily prejudice. You would think you would, but the court says you don't, and you can't waive it. So what do I do? I don't believe the defendant waived it, Your Honor. It was raised. No, the attorney, his attorney at the November 10th hearing said my schedule was booked up too. That's correct. But Zedner says you can't waive it. So give me a hook. I still believe that brings us back to this error has to have affected his substantial rights, and if the court finds that there's error. Well, the defendant does have a right to a speedy trial. I mean, that's what the statute's about. The Speedy Trial Act, correct. I mean, there's no question that the government is not arguing that he does not have that right and that the 70 days applies. If prejudice isn't required, then in this context, what more would a defendant have to show regarding substantial rights, but that I don't get to move to dismiss? He did move to dismiss, Your Honor, pre-trial. There was a motion that was filed on the first day of trial to dismiss based upon speedy trial. It was denied, and that brings us into the court deeming this clear error because of the violation of the Speedy Trial Act, and then that places the burden on the defendant to show that his substantial rights were affected by this error, that but for this error, the outcome in the district court would have been different, and he can't do that here. Tell me where it says that. I mean, I've asked it before. Give me some support for that somewhere. May I refer to my brief, Your Honor? Sure. I apologize, Your Honor. I can't put my finger on it. Even if Zedner hadn't been around, and he's been around for 12 years, in our 1989 case in Brenna, we held that if a district court enters a continuance without either stating the factual basis for excluding the time, which it's supposed to do, or using language that invokes the act like the ends of justice, the delay caused by the continuance is not excluded, and the district court cannot exclude the time in hindsight. That's a precedent of our court. I mean, absent going in bank, I don't know how to get around that either. I agree that that is certainly a precedent of the court, Your Honor, and it was clear error. And, again, if the court finds, I think the court would be hard-pressed not to find clear error here, in all honesty. But still, clear error requires that the defendant show that there was an effect on his substantial rights, but for that error, the outcome in the lower court would have been different. Your argument here is that his substantial rights weren't affected in this particular factual scenario. Give me a factual scenario in which you would agree that the argument of substantial rights being affected would prevail. Well, I believe that if a defendant is incarcerated for a long period of time and is asserting his speedy trial rights and he's not getting relief from the court, or if his reputation is being damaged, if he's being deprived of a livelihood in that period of time, and if there is some kind of bad faith on the part of the parties that is causing these violations of the Speedy Trial Act, none of which are in place here. This is a defendant who was free and living in Arkansas until a week before the trial, so he was not in custody. There was nothing preventing him from making a living. He was far removed from the situation, and he was not out there asserting his rights. I won a trial. In fact, the week before the trial, he was in effect asking for a continuance. I don't believe he has asserted before this court any prejudice or any effect on his substantial rights, and this is clearly a case where if the indictment was dismissed, it would have been dismissed without prejudice for all of the reasons that I stated. This is a serious case. This was through no fault of the government. The government and victims would be punished for an error of the court, and the error of this court was not in bad faith. It wasn't, and I would limit the... There's no criminal case that you can articulate today in which if there was a dismissal of the indictment, you couldn't make the public effect argument, right, because no matter the criminal charge, the public is adversely affected. So that can't be like the argument to rely on, right, because that would be available in every case. Well, I think that's an issue in every case, the public reputation of the judicial process, and I don't believe that that would have been impacted on re-presentment in this case because re-presentment would have been done immediately because it was a serious case. It could have been done with ease. There was no statute of limitations here, and this was not a particularly egregious violation of the act. Yeah, but re-presentment is an available avenue to the government also in every case. I mean, the point isn't we have a speedy trial violation. We're not going to revoke it because we know that the government could re-indict or re-present and then obviously re-indict. I mean, I don't think that's the way to think about it. Well, it's part of the thought process in contemplating the public reputation and the public perception of the criminal justice system. And I think that on balance in this case, because it was a court error and because there was no bad faith involved in depriving the defendant of his right to a speedy trial under the act and because there were real victims here and hundreds of thousands of dollars engaged in the fraud and because of the speed at which the government could have moved at that point, it really would not have a tremendous impact on balance on the public reputation of the courts. Justice, or... Well, actually, I was just going to ask you... Judge, you can't forget justice. No, thanks. Not today, huh? If we disagree with you flatly, what's the remedy? Does he get a new trial? If you find clear error and you find that there was an effect on his substantial rights, he gets a new trial. Okay. I mean, the problem that I have is at the end of Zedner, the Supreme Court says, it talks about harmless error. We thus conclude that when a district court makes no findings on the record in support of a continuance, this was under 3161HA, harmless error review is not appropriate. And I keep asking, tell me how I get around that. It's not a harmless error assessment, and we're not arguing that it is. What is it then? It's an effect on the defendant's substantial rights, such that but for the error, the outcome in the district court would have been different. How is that not harmless error analysis? In other words, if we say, was he prejudiced, was he harmed? And if he wasn't prejudiced, then it's harmless. And the court is saying you don't do that type of analysis with regard to this particular statute. I believe a harmless error is a lesser burden for the government, Your Honor. When the error occurred, but in the context of everything else, it was harmless. Here, there's a different criteria to be met. It would have been a flat-out dismissal of the indictment. The government would have borne the burden of representing, which we could have done immediately in this case. And because of the seriousness of the case. How do I get around that language in Seddon? And if not, then that may be game set in point here, match here, right? I mean, we may not get to the other issues. We may not get to the sentencing issues. I mean, you can argue that, geez, it's not very efficient, but we didn't enact the Speedy Trial Act. Without due respect, Your Honor, I think the way you get around it is you find that yes, there was error. However, there was no impact on the defendant's substantial case. There was no prejudice, right? Well, I think it's higher than prejudice. I think there are other facts that come into play in terms of the government's representing to the grand jury. I think that part of the equation is the seriousness of the offense. I think part of the equation is what caused the delay. What caused the delay was the court. Precisely. And the court didn't tally up what you needed to do, the days, and it didn't give any reason for why it did what it did, and you can't consent to it. Correct. However, you still have to, the defendant still bears the burden of showing that error. No, the defendant has the burden of objecting under 3162A2. The defendant must move for dismissal prior to trial. He did. He did, Your Honor. However, he still bears the burden of showing that it had a substantial impact on his rights. I just quoted you language from Zedner that says he doesn't have to do that. And you're not giving me a, I mean, we're beating a dead horse. Let's talk about wealthy for a second. Is there anything else? I mean, are there questions on any other issues here? I want to talk about wealthy for a second. Go right ahead. Assuming that we get past this, did the district court make a sufficient wealthy inquiry? The district court did, Your Honor, and the government's position on this issue is that the defendant did in fact have his counsel of choice at trial. And I say that for the following reasons. This defendant had a privately retained counsel. He could have fired him at any point in time. He did not need the court's permission to do that. Instead, what this defendant did was he came to court on the eve of trial, and the government's view was the eve of trial, and pretty much asked the court to appoint an attorney and complained to the court about issues that had occurred primarily on November 10th, 2016, some three months earlier or before that. He had three months to bring this issue to the court. In fact, on November 10th, when he made these allegations about foul language being used and about how an argument had ensued, he could have fired his attorney right then and there. He didn't need the permission of the court to do that. Or thereafter, he could have hired another attorney, or he could have motioned the court for appointment of counsel, and the court would have told him you need to prove indigent in order to receive an attorney. He didn't do that. Instead, on the eve of trial, he comes to court, and he tells the judge, I want a court-appointed counsel. At no point in either motion does he say, I'm indigent. And when the court tells him what he needs to do, he still doesn't do it. But doesn't he satisfy wealthy? Your argument is timing. My question to you is substance, right? Did he satisfy the wealthy factors? And if so, then isn't it error? You know, putting aside all the Speedy Crawford moments, isn't it error not to have granted him that opportunity? Timing is important, Your Honor, because what the defendant did was suggestive of a delay tactic. But the court did what it was required to do, which was to engage in that two-step process. It provided an opportunity for the defendant to be heard, and primarily there were three issues, none of which were deemed to be good cause by the district court. There was not a breakdown in communications, which is one of the things Judge Garth talked about. There was no evidence of irreconcilable conflict with the lawyer. I think those two seem to be self-evident that there were. Well, the defendant talked about the lack of communication with his attorney. He talked about the fact that his attorney had not filed the motions that he wanted him to file, which the court indicated that was strategy, not good cause. Attorneys often disagree on strategy. And the defendant felt that his counsel was not wholeheartedly advocating for him because he had encouraged him to take a plea. And the court deemed that all three of those issues not to be good cause. And, in fact, at the hearing, the defense counsel did not... If you don't want to plea and your lawyer wants you to plea, that's not an irreconcilable conflict. Well, in this case, Your Honor, in the words of the defense attorney, he said, look, in my view, and I would agree that he was being effective by saying, you confessed three times. There's a mountain of evidence here. I'm counseling you that it's in your best interest to take a plea. However, if you don't want to do that, and what defense counsel said on the record is, I counsel my clients according to the law and according to the facts. And if they want to go to trial, I work hard for them. I will zealously represent them. That's what I've been doing for 35 years. So I think it's not uncommon for defense attorneys and defendants to disagree on strategy, to disagree on... He would have been ineffective in this case had he not advised his client to take a plea in light of the overwhelming evidence in this case. That, in and of itself, is not good cause. Yeah, ineffectiveness is another issue, but thank you. Thank you. Mr. Shuman? I'd like to try to clarify the prejudice versus substantial rights point on the Speedy Trial Act issue. Do you need prejudice? We don't. So in the Sixth Amendment context, which is the Speedy Trial Act, right under the Sixth Amendment is the right belonging to the defendant. To establish a violation, the defendant needs to show prejudice, oppressive pretrial incarceration, damage to reputation, stress and anxiety. These are all things the government argued in its brief, but that's all the Sixth Amendment context. And we're not talking about the Sixth Amendment here. We're talking about the Speedy Trial Act. The Speedy Trial Act protects both the defendant and the public, and that's why under the Speedy Trial Act, it's clear that if the trial is delayed more than 70 days, the dismissal of the indictment is required. So when the error is not preserved and it's reviewed for plain error, and when you have to show an effect on your substantial rights to win on plain error, and substantial rights are the outcome of the proceeding would have been different. What that means is if the court had correctly counted these delays toward the 70-day time limit, it would have had to move – sorry, it would have had to dismiss the indictment. It would have had no discretion. The only discretion it would have had is whether or not that dismissal would have been with or without prejudice. And that's why Mr. Reese satisfies the plain error standard, because had these days been counted, the indictment would have been dismissed. The government says it would have immediately refiled the indictment. It would have made a difference. But what this court said in Stevenson is that dismissal of the indictment, even without prejudice, is not a toothless sanction, because it does impose a burden on the government to go back to the grand jury and try to indict the defendant. It's not a guaranteed outcome, and what this court said is that it matters. Is this a – according to your adversary, this would be a Pyrrhic victory, because they just – what Reaper said. Well, they have the right to try to do that, and they could, but it wouldn't be a Pyrrhic victory because it's not a guaranteed outcome. There could be a statute of limitations question, depending on the timing. Maybe the government would decide that it's not worth its resources to prosecute again so long after the fact. And it's important to enforce the Speedy Trial Act here, because it's not just about Mr. Reese. It's also about the public. And speaking of the public, you know, the government says, sort of alluding to the fourth prong of plain error, that there was no harm to the judiciary's reputation with this error. But I think quite the contrary. We have 120 days of delay. That's about a quarter of the entire delay in the case due to the court's calendar, which is expressly forbidden by the Speedy Trial Act. So I do think the fourth prong of plain error is satisfied here. One also point of information, the remedy here would not be an automatic new trial. It would be remand to the district court to consider whether or not dismissal of the indictment should be with or without prejudice, and that's a multi-factor analysis. I'm not sure we can predict the outcome of that just yet. If the court doesn't have any other questions on the speedy trial, I'd just like to address quickly the choice of counsel issue. I think the government's wrong to say that Mr. Reese was complaining about issues that were all prior to November. Mr. Reese's complaint was that Mr. D'Andrea had not been communicating with him in the months leading up to trial, and he detailed for the court their two explosive arguments in November and in February. He detailed the few exchanges they'd had about the case in between those times. I don't think there's any indication, contrary to what the government said, that this was suggestive of a bad faith intent to delay. Mr. Reese was in prison. He had nothing to gain from delaying the case, and it was his first request for new counsel, and he'd been complaining about Mr. D'Andrea for a long time. Finally, this is more than just a disagreement about strategy about a case. Sure, lawyers and clients can disagree about strategy, but when they can't have a conversation about the case without screaming at each other and Mr. D'Andrea telling Mr. Reese that nobody cares about his fancy dress or his education, he's going to prison and that's it, you have a total breakdown in communication that constitutes good cause. Thank you. Thank you.